IN THE MATTER OF THE GUARDIANSHIP OF ANNE TURNER, AN INFANT.

In the absence of any direction or expressed preference by the father, as to the guardianship or religious education of an infant child, the clearly expressed wishes of the mother will be regarded; and where application was

made for the guardianship of the child, by both the paternal and maternal grandfathers, both being of equal competency and fitness, the guardianship was given to the maternal grandfather, in accordance with the wishes of the mother.

Argued on two applications for guardianship; one by S. J. Turner, the paternal grandfather, and the other by D. Mc-Namara, the maternal grandfather.

*Mr. W. B. Williams*, for S. J. Turner.

*Mr. Garrick*, for D. McNamara.

THE ORDINARY.

The father and mother of the infant are dead. The father, Captain James B. Turner, was in the army of the Union, and fell in one of the battles before Richmond, in May, 1846. The mother survived until 1867. The father died intestate, leaving little property, not exceeding in the whole $1000 in value, and made no disposition of the custody of his child. The father was educated a protestant, but was not connected as a church member with any church, but attended the protestant. church of which his parents and sisters were members. When married, he consented on the requirement of the Roman Catholic priest, who performed the ceremony, that the children of the marriage should be educated in the Roman Catholic faith; and he consented, when absent from home in the army, that the child should be baptized with the rites of that church, and made the arrangements for the christening, which took place in his absence.

The mother was educated as a Roman Catholic, and continued such to her death. She made a will, and in it directed that her father and sisters should be the executors and guardians of her child, and that her child, from the age of ten to seventeen, should be educated in a Roman Catholic convent.

Much evidence was taken on both sides, as to the capability of the paternal and maternal grandfathers, and their families,

to take care of, and educate the child. Each grandfather has in his family several unmarried daughters, willing and able to care for, and attend to the infant. The paternal grandfather is a clerk in the office of the water commissioners of Jersey City, with a fair salary, but without property. The maternal grandfather is a prosperous mechanic with property amounting to about $15,000, and is employed as one of the policemen of Jersey City. Nothing is alleged against the moral character of either family, or the habits of any member of either.

Several witnesses on each side testify, that the family by which they are respectively called, is better qualified for the care and education of this infant, than the other. It is very difficult in this mere matter of opinion of witnesses, to decide on which side the testimony preponderates. I am inclined to think that it is rather more explicit and satisfactory in favor of the paternal grandfather. Yet this preponderance depends more upon the manner in which these witnesses have expressed their opinion, than in the facts stated on which the opinions are founded. In this state of the testimony on this important point, as I am satisfied that either grandfather is competent and willing to take proper care of this child, other considerations which are entitled to some weight must be regarded.

The religious training of the child, so far as regards the sect or denomination under the influence of which that training shall take place, is entitled to consideration. In this case it is regarded on both sides as a matter of great importance. In this state all christian denominations stand on the same footing in the eye of the law. No Chancellor or Judge, although he cannot avoid the conviction that the faith which he has adopted by education or choice, and the church to which he is in consequence of this attached, would be the best for the welfare of the child, has the right to be governed by his individual belief in the disposition of the children of others. Parents while living have a right to control the religious education of their children, and their wishes in this

respect must be regarded after their death. Where both parents were of the same religious faith, and die without expressing any wish on this subject, the courts will presume that they wished their children educated in their own faith. In this case the father, who by law has the right to dispose of the guardianship of his child, has expressed no wish, authoritative or otherwise. I cannot regard his promise to the priest at his marriage, as expressing a wish; the circumstances under which it was exacted, would by no means allow it to be considered as the expression of his desire or conviction. The fact that he consented to its baptism in the Roman church, is of more weight, and yet cannot be regarded as the expression of a desire on his part as to the religious education of his child. But knowing the desire of his wife and her friends, and what would be their course if he should die, he omitted to make any provision, from which it may be inferred that he assented that his wife should control in this matter. The mother of the child by her last will, has in the clearest manner, expressed her wishes on this subject, and they should be regarded by the court. Her wishes and convictions rather than those of the judge, should be allowed to guide the religious education of her child. So far then as this consideration is entitled to any weight, the leaning should be to the maternal grandfather.

The same considerations apply with more force to the question of selecting the guardian, now directly before the court. The paternal kin are not entitled to any preference on that account, over the maternal; both stand on the same footing. *Albert* v. *Perry*, 1 *McCarter* 540; *Underhill* v. *Dennis*, 9 *Paige* 202.

The father has expressed no wish or preference in this matter, but the mother, the surviving parent, has. She had no power to dispose of the guardianship, and the disposition of it in her will is void; but it is an authentic expression of her wishes, and as such will be regarded by the court. *Underhill* v. *Dennis*, 9 *Paige* 202; *Bennett* v. *Byrne*, 2

In the matter of Anne Turner.

*Barb. C. R.* 216 ; *In re Kaye, Eng. Law Rep.*, 1 *Chan.* 387 ; *Foster* v. *Mott,* 3 *Bradf. R.* 409. It might not be, if it appeared clearly that the interest of the infant required her wishes to be disregarded. In this case it does not so appear. For these reasons, I am of opinion, that the guardianship of the infant should be committed to Daniel McNamara, the maternal grandfather.